LOTTIE ROBINSON, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 89819.  Filed May 18, 1964.

*Leon E. Mendel,* for the petitioner.
*Conley G. Wilkerson,* for the respondent.

#### OPINION

SCOTT, *Judge:* Respondent determined deficiencies in petitioner's income tax for the calendar years 1956, 1957, and 1958 in the amounts of $170, $172, and $178, respectively.

The issue for decision is whether payments received during the calendar years 1956, 1957, and 1958 by petitioner, the widow of a Columbus, Ohio, policeman, from the Columbus Police Relief Fund are includable in her taxable income.

All of the facts have been stipulated and are found accordingly.

Petitioner, a resident of Columbus, Ohio, filed individual income tax returns with the district director of internal revenue at Columbus, Ohio, for each of the calendar years 1956, 1957, and 1958.

Petitioner is the widow of Emmett E. Robinson, who was employed from October 6, 1920, to the date of his death on August 30, 1939, by the police department of the city of Columbus, Ohio.

Emmett E. Robinson died from chronic myocarditis following an appendicitis operation. At the time of his death there was in existence in Columbus, Ohio, a police relief fund which had been established by the city of Columbus, Ohio, under authority of section 4616 of the Ohio General Code (now Ohio Rev. Code sec. 741.32). Section 4621 of the Ohio General Code (Ohio Rev. Code sec. 741.40) provided for a special tax to be levied by the municipality to provide funds for the Police Relief Fund and Police Relief Sub-Fund and section 4623 of the Ohio General Code (now Ohio Rev. Code sec. 741.41) provided for the crediting to the fund of members' fines, rewards, and fees. Sections 1, 2, and 3 of rule 15 of the Police Relief Fund and Police Relief Sub-Fund of Columbus, Ohio, provided for pensions to be paid upon voluntary retirement or disability after a stated number of years of service to a member of the division of police of Columbus, Ohio. Section 4 of rule 15 provided in part as follows:

If any member of the Division of Police, while in the proper performance of his or her duty, be killed, or die from the effects of an injury thus received, or shall die from any cause after having served for not less than ten (10) years in said Division of Police, or any member who shall die, having been retired and pensioned under the provisions of the three previous sections of this rule, and at time of death leaves a widow, or minor child, or children under the age of sixteen years; or at the time of death if unmarried, leaves a dependent Mother or Father, either of whom depended wholly or in part upon him for support, the Board of Trustees, of the Police Relief Fund shall authorize, and direct the payment from the Police Relief Fund, the following sums, payable monthly:

To such widow, while she remains unmarried, the sum of $50.00.

Section 4 further provided that in the event any widow of a deceased member of the division of police is eligible to and does receive death benefits from the workmen's compensation fund of the State of Ohio, such widow shall not be eligible to receive any pension until termination of such payments under the Workmen's Compensation Act of Ohio. This rule further provided that should the widow become disreputable or knowingly engage in any unlawful or immoral business, then she shall be subject to forfeiture of her pension, upon a majority vote of the board.

By an application bearing a stamped date of August 30, 1939, petitioner applied to the board of trustees of the police relief fund of the city of Columbus, Ohio, for a pension as the widow of Patrolman Emmett E. Robinson. Petitioner's application was approved by the board of trustees at a meeting on September 11, 1939, and she

was granted a pension in the amount of $50 a month commencing on August 30, 1939.

The payments to petitioner from the police relief fund were increased to $60 per month as of April 1, 1950, and to $75 per month as of September 1, 1957. During the years 1956, 1957, and 1958 petitioner received $720, $780, and $900, respectively, from the police relief fund of the State of Ohio.

Petitioner did not report the amounts received from the police relief fund on her income tax return for these years as taxable income and did not report and pay tax on any of the amounts received in years prior to the year 1956.

The police relief fund of the city of Columbus, Ohio, was noncontributory on the part of employees from the time of its establishment until sometime in 1939, but was changed sometime during August 1939, prior to the date of death of Emmett E. Robinson, to a contributory plan, and upon such change to the employees were required to contribute 2 percent of their salary to the fund.

Death benefits on account of the death of Emmett E. Robinson in the amount of $1,000 were paid to the designated beneficiary, Paul D. Robinson, from the police relief fund.

Respondent in his notice of deficiency increased petitioner's income tax as reported by the amount of $900 in each of the years 1956, 1957, and 1958, with the explanation that such amounts represented a pension received by her as the widow of a policeman and that the amount so received was includable in her taxable income.

Petitioner takes the position that the amount she received from the Columbus, Ohio, Police Relief Fund was an award excludable under section 102(a) of the Internal Revenue Code of 1954,[1] as an amount received by gift, bequest, devise, or inheritance. As an alternative to this contention petitioner contends that the payments which she received are not taxable income since they are amounts received in the nature of workmen's compensation for personal injury or sickness within the provisions of section 104(a)(1).[2]

Respondent contends that the payments made to petitioner were includable in her taxable income since they were paid because of the death of her husband and as consideration for services rendered by him. Respondent contends that section 101(b) which provides for the exclusion from income of a beneficiary of certain amounts received by reason of the death of an employee is not applicable to the amounts received by petitioner because of the provisions of section 101(f)

---

[1] All references are to the Internal Revenue Code of 1954, unless otherwise indicated
[2] SEC. 104. COMPENSATION FOR INJURIES OR SICKNESS.
(a) IN GENERAL.—Except in the case of amounts attributable to (and not in excess of) deductions allowed under section 213 (relating to medical, etc., expenses) for any prior taxable year, gross income does not include—
(1) amounts received under workmen's compensation acts as compensation for personal injuries or sickness;

which make section 101(b) applicable to amounts received by reason of the death of an employee occurring after the date of the enactment of the Internal Revenue Code of 1954 and section 22(b)(1)(B) of the Internal Revenue Code of 1939 applicable to amounts received by reason of the death of an employee prior to that date.

Respondent takes the position that the payments petitioner received do not fall within the provisions of section 22(b)(1)(B) of the Internal Revenue Code of 1939, since petitioner's husband's death occurred prior to January 1, 1951, the first year to which the provisions of that section are applicable. It is further respondent's position that if the provisions of section 22(b)(1)(B) of the Internal Revenue Code of 1939 are applicable to the payments received by petitioner, these payments are nevertheless taxable in full since petitioner has already received the benefit of the full $5,000 exclusion from income provided for by that section. Respondent takes the position that the payments petitioner received are not annuities within the provisions of section 72 since they were not received under an annuity, endowment, or life insurance contract.[3] Respondent states, however, that if it is assumed contrary to his contention, that the payments are annuities within the provisions of section 72, they are nevertheless fully taxable since any possible amount which petitioner's deceased husband paid into the retirement fund would have been recovered by petitioner in the first year during which payments to her were made.

The evidence is clear that the amounts here involved were amounts received by petitioner because her husband had been employed for more than 10 years by the police department of Columbus, Ohio, at the time of his death. These payments constitute taxable income unless exempt under some specific section of the internal revenue laws. See *Anna E. Curtis*, 8 T.C. 266 (1947). The amounts were not property acquired by bequest, devise, or inheritance since petitioner's husband had no property rights in the fund which were subject to being so acquired by petitioner. The possible exception would be any contribution which might have been made by withholding from petitioner's husband's salary and the evidence is insufficient to establish that there was any such withholding. Certainly if there were any such withholding the amount thereof would have been returned to petitioner by the end of 1939. Prior to his death, petitioner's husband had no vested rights in the fund. Petitioner's rights therein arose upon his death while in the employ of the police department. *State ex rel Cunat* v. *Trustees of Cleveland Police R. & P. Fund*, 149 Ohio

---

[3] SEC. 72. ANNUITIES; CERTAIN PROCEEDS OF ENDOWMENT AND LIFE INSURANCE CONTRACTS.

(a) GENERAL RULE FOR ANNUITIES.—Except as otherwise provided in this chapter, gross income includes any amount received as an annuity (whether for a period certain or during one or more lives) under an annuity, endowment, or life insurance contract.

St. 477, 79 N.E. 2d 316 (1948). The payments have no aspects of amounts paid under an insurance contract because there existed no such insurance contract with petitioner's husband in the rules of the police relief fund. See *Essenfeld* v. *Commissioner*, 311 F. 2d 208 (C.A. 2, 1962) affirming 37 T.C. 117. Had petitioner's husband died prior to September 22, 1937, it might be held that under Ohio law the payments were gifts or gratuities to petitioner from the State. *Mell* v. *State*, 130 Ohio St. 306, 199 N.E. 72 (1935). This would not necessarily determine whether such payments were gifts for purposes of income tax but we do not have to pass on this question since section 4628–1 of the General Code of Ohio (now Ohio Rev. Code sec. 741.46) effective September 22, 1937, changed the prior Ohio law and created a vested right in a pension after it was granted. In *State ex rel Cunat* v. *Trustees of Cleveland Police R. & P. Fund*, *supra*, the court stated:

Subsequent to such decision and patently to change the rule established thereby, the General Assembly passed the "vested right" statutes.

Referring to Section 4628–1, General Code, Judge Williams spoke as follows in the Lemperle case, supra [145 Ohio St. 107, 60 N.E. 2d 788]:

"A pension, granted after the statute took effect, is vested insofar as the power of the trustees is concerned. The provision deprives the trustees of power to take away or impair the right to a subsequently granted pension but does not affect the trustees' right to pass rules altering pensions previously granted."

\*      \*      \*      \*      \*      \*      \*

Although the Mell case, supra, placed pensions granted to public servants in the category of "gratuities," a number of cases from other jurisdictions take the position that pensions awarded public employees should not be regarded as gratuities or bounties, but as a consideration for services which were not fully recompensed when rendered; and that the contributions made by governmental units to such pension funds accomplish the purposes of bringing about better and more efficient service, of improving the quality and morale of public employees, of attracting competent persons to public service and of retaining faithful and experienced employees who otherwise might seek more lucrative and promising work.

[1] Doubtless the considerations outlined just above were responsible, in a measure at least, for the enactment of the "vested right" statutes, and the effect of those statutes is to make the engagement of public authorities to pay a pension, upon conditions fulfilled, a contractual obligation founded upon a valid consideration, giving to the pensioner a vested right in his pension which cannot afterwards be impaired or revoked.

Petitioner in the instant case was granted her pension in 1939 and under the Ohio law in effect at that date the pension was not a gift. See *Anna E. Curtis*, *supra;* cf. *Smith* v. *Commissioner*, 305 F. 2d 778 (C.A. 3, 1962), affirming a Memorandum Opinion of this Court.

Petitioner's contention that the amount is nontaxable under section 104(a)(1) is equally without foundation. This section provides that gross income does not include amounts received under workmen's compensation acts as compensation for personal injuries or sickness.

Petitioner did not receive the amount as compensation for personal injuries or sickness but received them because of her husband's employment prior to his death. The death of petitioner's husband was in no way connected with his police service. Therefore the payments which petitioner received were not equivalent to workmen's compensation benefits allowable because of a spouse's death in line of duty. See *Charles F. Brown*, 25 T.C. 220 (1955). Cf. *William E. Conroy*, 41 T.C. 685 (1964).

The payments to petitioner were not received under an annuity, endowment, or life insurance contract and therefore do not constitute an annuity under section 72. Cf. *Essenfeld* v. *Commissioner, supra.*

It is unnecessary to decide whether the payments received by petitioner are "death benefits" under the provisions of section 101(b) of the Internal Revenue Code of 1954 since section 101(f)[4] specifically makes section 22(b)(1) of the Internal Revenue Code of 1939 applicable to amounts paid by reason of the death of an employee prior to the date of enactment of the Internal Revenue Code of 1954. Section 22(b)(1)(B) of the Internal Revenue Code of 1939[5] provides for an exclusion limited to $5,000 for amounts received "under a contract of an employer" providing for such payments. Respondent's regulations (sec. 39.22(b)(1)-2(c), Regs. 118) provide:

An express contract requiring payments by an employer to the beneficiaries of a deceased employee by reason of the latter's death shall be deemed to exist only if * * * (2) the employer had an established plan (or program having the effect of a plan) making provision for such payments in the case of his employees generally, or for a class or classes of his employees. * * *

While it might be questionable whether the police relief fund should be considered a contract between the policemen and their employer, the city, but see *State ex rel Curran* v. *Brookes*, 60 N.E. 2d 62, 144 Ohio St. 582 (1945), such fund is clearly an established plan of the city and therefore an express contract is deemed to exist under respondent's regulations. Respondent makes no contention that these regulations are not applicable here. They are a reasonable interpretation of the statute and we consider them to be valid.

Under the facts here present, petitioner's husband had no non-forfeitable right to receive any amount from the fund while living

---

[4] SEC. 101(f). EFFECTIVE DATE OF SECTION.—This section shall apply only to amounts received by reason of the death of an insured or an employee occurring after the date of enactment of this title. Section 22(b)(1) of the Internal Revenue Code of 1939 shall apply to amounts received by reason of the death of an insured or an employee occurring on or before such date.

[5] SEC. 22(b)(1) LIFE INSURANCE, ETC.—Amounts received—

* * * * * * *

(B) under a contract of an employer providing for the payment of such amounts to the beneficiaries of an employee, paid by reason of the death of the employee;
whether in a single sum or otherwise * * *. The aggregate of the amounts excludible under subparagraph (B) by all the beneficiaries of the employee under all such contracts of any one employer may not exceed $5,000.

but only would obtain such rights if he did not resign from the police division prior to meeting the qualifications for retirement. Therefore, the payments received by petitioner do not come within the definition of amounts to which section 22(b)(1)(B) of the Internal Revenue Code of 1939 do not apply contained in section 39.22(b)(1)–2(d) of Regs. 118. See *Hazel W. Pollnow*, 35 T.C. 715 (1961).

In the instant case we are confronted directly with the following question posed in *Mary Tighe*, 33 T.C. 557, 565 (1959) :

We have not considered whether section 22(b)(1)(B), which was first enacted in 1951, would be applicable to payments received by reason of the death of a person who died many years prior to the effective date of the law, because it was not argued by either party and is not necessary for our decision on this point.

The payments to petitioner were amounts received "under a contract of an employer providing for the payment of such amounts to the beneficiaries of an employee, paid by reason of the death of the employee." Since petitioner received the amounts in 1956, 1957, and 1958, the provisions of section 22(b)(1) of the Internal Revenue Code of 1939 are expressly made applicable to these payments by section 101(f) of the Internal Revenue Code of 1954. Section 101(f) does not state that section 22(b)(1) of the Internal Revenue Code of 1939 shall be applicable only to amounts received by reason of the death of an employee "after January 1, 1951" and before the date of the enactment of the Internal Revenue Code of 1954.

We, therefore, hold section 22(b)(1)(B) of the Internal Revenue Code of 1939 to be applicable to the payments received by petitioner in the years here in issue. Under these provisions the aggregate of the amounts excludable may not exceed $5,000. The record shows that prior to January 1, 1951, petitioner had received in excess of $5,000 which she had not reported as taxable income. For the years 1951, 1952, 1953, 1954, and 1955 petitioner had received a total of $3,600 which she had not reported as taxable income. The inference from the record is that after January 1, 1951, petitioner was the only person receiving benefits from the city of Columbus because of petitioner's husband's death. For years prior to January 1, 1951, petitioner should have reported her pension payments as taxable income. No portion of these payments was excludable from income during those years by applicable law. The fact that these payments were not included in petitioner's taxable income for the years 1939 through 1950 means that petitioner incorrectly reported her income for these years but does not make the amounts so omitted from her income excludable therefrom as a matter of law. Therefore, no amounts which petitioner had received by reason of her husband's

death prior to 1951 were a part of the aggregate of the amounts excludable from her income. From 1951 to the beginning of 1956, petitioner had received $3,600 of payments because of her husband's death which were "excludible" under section 22(b)(1)(B) of the Internal Revenue Code of 1939, leaving the amount of $1,400 which petitioner was still entitled to exclude. Petitioner received $720 in 1956 leaving $680 excludable in 1957. We therefore hold that respondent was in error in including the payments received by petitioner in 1956 in her taxable income and in including an amount in excess of $100 in her taxable income for 1957 but was correct in including the entire amounts received in 1958 in her taxable income for that year.

*Decision will be entered under Rule 50.*